Marvin v. The State.

APPEAL from the *Marion* Common Pleas.

*A. J. Thornton,* and *McDonald, Roache,* and *Lewis,* for the appellant.

---

## SULLIVAN *v.* THE STATE.

APPEAL from the *Dearborn* Common Pleas.

*McDonald, Roache,* and *Lewis,* for the appellant.

---

## MARVIN *v.* THE STATE.

The words, "If any person shall disturb any religious society, or any member thereof, when met or meeting together for public worship," shall be fined, etc., in section 37, of the Act defining Misdemeanors, etc., are void for uncertainty, so far as they attempt to create and define a crime or misdemeanor.

APPEAL from the *Fountain* Common Pleas.

PERKINS, J.—*Jesse Marvin* was prosecuted in the *Fountain* Common Pleas, for disturbing a religious meeting by responding to the preacher. He was convicted and fined.

We have a statute which enacts, that if any person shall

keep a place for the sale of any article; or shall sell any article; or shall keep any gaming apparatus; or shall permit his real property to be occupied for any of the aforementioned purposes, or with the aforementioned apparatus, within a mile of any meeting, assembled for, etc., or shall disturb any such meeting, or any member thereof, either at the meeting, or while going to or returning from the same, etc., shall be fined not less than five nor more than twenty-five dollars. 2 G. & H., p. 469.

The defendant in this case, as appears, was not prosecuted for any one of the acts specified in the statute as constituting a crime, as entering into its definitions, but under the general clause, for disturbing a religious meeting; a clause which defines nothing, but enacts a vague conclusion, an abstract, general proposition, of infinitely uncertain application. And the question is: Can the conviction, upon that branch of the statute, be sustained?

Before proceeding to answer this question, we may, with propriety, look a moment or two at some heretofore, in this country, generally conceded views and propositions:

1. There are two general modes of government, viz., by rule, or established laws, and without rule, without regard to law, that is, by magisterial discretion.

In theory, a political organization, governed by magisterial discretion, is an unmitigated despotism; and, according to history, it has generally turned out to be so in practice. In past years, the *Sultan* of *Turkey*, the *Autocrat* of *Russia*, and some of the kings and emperors of ancient *Rome*, governed by magisterial discretion. The *Tudors* and *Stuarts* of *England* attempted the same kind of government. Government by such discretion, is the government of a master over a slave.

2. The devising of proper and efficient checks upon governmental discretion, whereby lawless outrage upon the citizen may be prevented, is one of the greatest achievements

in political science. Among the checks already devised for such purpose, are the division of a single government into departments, and the framing, with precision and certainty of expression and definition, of written constitutions and laws, declaring the rights, duties, and liabilities of all, and controlling the action, and limiting the powers, alike of the governors and the governed.

3. Magisterial discretion, in declaring and punishing crimes, is, perhaps, more liable to abuse, and to be made the instrument of tyranny and oppression, than it is in any other branch of administration. Hence the necessity of the most efficient checks, and their most scrupulous observance in this branch. Influenced, we may presume, by these considerations, it has been made established law, that there are no common law crimes in this State; that, in *Indiana*, " Crimes and misdemeanors shall be defined, and punishment therefor fixed by the statutes of this State, and not otherwise." 1 G. & H., p. 416, and notes.

This may be an injudicious application of the doctrine of limiting discretion; it may be carrying it to extreme. It not only cuts off magisterial, executive discretion in declaring crimes, which is certainly right, but, also judicial, which may be wrong, and is surely inconvenient, when applied to every possible case. The legislature can scarcely foresee every state of facts, can scarcely anticipate every possible act, and, hence, can scarcely prescribe specially for every individual case; while, on the other hand, the judiciary acts generally upon individual cases as they occur, and is thus enabled, by a careful and wise discrimination, to gradually build up a criminal code, within limits prescribed by the legislature, more just and certain in character than might otherwise be obtained. At the same time, it must be accomplished through the judiciary, by open, speedy public trials, with the aid of counsel and jury, whereby tyranny and abuse will be pretty effectually checked.

It might be better to leave the power in the Courts of defining, upon given states of fact, or going to the common law for definitions, in cases of necessity, as was formerly the practice in this State. See 1 Kent Com., Lecture 16. But we have not to decide upon what the law might be, but what it is. It is, that the legislature alone can define a crime in *Indiana*. No crime, then, can be punished, in *Indiana*, by her own Courts, till it has been defined. No power can define a crime but the legislative; hence, the Court can not do it here, as it can in *England*, in case of misdemeanors. The question in this case is, then: Has the legislature defined the crime of disturbing a meeting? If so, what is the definition? Where is it to be found? What must a person do to, in legal meaning, disturb a meeting, or a member thereof? Will a look disturb? Will a smile? Will a word spoken? Will a posture, or style of dress disturb? If so, what? Who can give an exact answer? And, is intention with which an act is done to be material? Naming a crime is not defining it; but a definition is an enumeration of the particular acts included by or under the name.

That part of the section of the statute, then, which simply declares that it is a crime to disturb a meeting, only names, without defining, a crime; and the Court can not define it without exercising magisterial discretion; and judge-made law, in this case, would, perhaps, be the law of a tyrant. See *Spencer* v. *The State*, 5 Ind., p. 46.

The decision we here make but follows those in *Hackney* v. *The State*, 8 Ind. 494, and *Jennings* v. *The State*, and *The State* v. *Huey*, 16 *Id.*, pp. 335, 338.

*Per Curiam.*—The judgment is reversed. Cause remanded to be dismissed.

*M. M. Millford,* for the appellant.