GLOVER v. MALLOSKA.

1. LOTTERIES—ESSENTIALS—STATUTES.
 The scheme of a wholesale oil company, in selling to its customers tickets to be given to their customers and others, giving to the holders, once a month, a chance to draw an automobile, is clearly a lottery within the meaning of 3 Comp. Laws 1915, §§ 15050, 15051; the essentials of a lottery: consideration, prize, and chance, all being present.

[1]Lotteries, 38 C. J. §§ 2, 16; 17 R. C. L. 1222; 3 R. C. L. Supp. 772; 4 R. C. L. Supp. 1173; 5 R. C. L. Supp. 967; 6 R. C. L. Supp. 1047.

2. INJUNCTION—EQUITY WILL PROTECT PROPERTY RIGHTS EVEN BY
RESTRAINING CRIMINAL ACTS.
> Although equity has no inherent jurisdiction to restrain
> the commission of criminal acts, it has jurisdiction to
> protect property rights, even in instances where such
> rights are injured by criminal acts.

3. SAME — DEALER MAY RESTRAIN COMPETITOR FROM OPERATING
LOTTERY.
> An oil company is entitled to restrain the operation of
> a lottery by a competitor for the purpose of enhancing
> its sales, where loss to plaintiff is directly traceable thereto,
> although its operation is a crime under the statute (3
> Comp. Laws 1915, §§ 15050, 15051) and punishable there-
> under.

Appeal from Genesee; Brennan (Fred W.), J. Sub-
mitted January 19, 1927.    (Docket No. 128.)    De-
cided April 1, 1927.

Bill by Floyd M. Glover, doing business as the Flint
Oil Company, and others against William F. Malloska,
doing business as the Lincoln Petroleum Products Com-
pany, and others to enjoin a lottery scheme.    From a
decree dismissing the bill, plaintiffs appeal.    Re-
versed, and decree entered for plaintiffs.

*Neithercut & Neithercut,* for plaintiffs.

*Gault & Parker,* for defendants.

WIEST, J.    This is a bill in equity to enjoin an
alleged lottery scheme, claimed to be employed by de-
fendants to attract business to the injury of plaintiffs'
property rights in competing business.    Defendant
Malloska, doing business as the Lincoln Petroleum
Products Company in the city of Flint, conceived the
idea that it would aid his business of selling gasoline
and oils to retail dealers to have tickets printed giving
holders thereof a chance to draw an automobile at

---

[2]Injunctions, 32 C. J. §§ 438, 440; [3]Id., 32 C. J. § 441 (Anno).

monthly drawings.  Malloska procured the tickets, sold the same at a cent each to his customers, and let them give away the tickets to purchasers at their retail oil stations, or to any one asking for tickets without making a purchase.  Once a month stubs of the tickets so given out were placed in a barrel, a drawing made, and the winner determined by chance. Plaintiffs are wholesale dealers in gasoline and oils in the same city, and assert the lottery scheme so employed by their competitor and his customers in the retail trade caused their sales to greatly fall off, to their financial injury, and by the bill herein they seek an injunction to restrain such unfair and illegal practice.  The circuit judge held there was no violation of the statute against lotteries and dismissed the bill. Plaintiffs appealed.

Two questions are presented.  (1) Was the scheme a lottery?  (2) If so, has the equity court jurisdiction?

Section 15050, 3 Comp. Laws 1915, provides:

"Every person who shall set up or promote, within this State, any lottery or gift enterprise for money, or shall dispose of any property, real or personal, goods, chattels or merchandise or valuable thing, by the way of lottery or gift enterprise, and every person who shall aid, either by printing or writing, or shall in any way be concerned in the setting up, managing or drawing of any such lottery or gift enterprise, or who shall, in any house, shop or building owned or occupied by him or under his control, knowingly permit the setting up, managing or drawing of such lottery or gift enterprise, or the sale of any lottery ticket or share of a ticket, or any other writing, certificate, bill, goods, chattels or merchandise, token or other device purporting or intended to entitle the holder or bearer or other person to any prize or gift, or to any share of or interest in any prize or gift to be drawn in any such lottery or gift enterprise, * * * shall for every such offense be punished by a fine not exceeding two thousand dollars, or by imprisonment in the county jail not more than one year."

Section 15051, 3 Comp. Laws 1915, provides:

"Every person who shall sell either for himself or for any other person, or shall offer for sale, or shall have in his possession with intent to sell or offer for sale, or to exchange or negotiate, or shall in any wise aid or assist in the selling, negotiating or disposing of a ticket in any such lottery or gift enterprise * * * shall be punished." * * *

The scheme was clearly a lottery. *People* v. *McPhee,* 139 Mich. 687 (69 L. R. A. 505, 5 Ann. Cas. 835); *People* v. *Wassmus,* 214 Mich. 42. The often asserted essentials of a lottery, viz.: consideration, prize, and chance, were all present. Malloska sold the tickets to his customers for distribution by them in the course of trade to further his pecuniary interest, and this established consideration. The fact that Malloska gave some tickets away at fairs and exhibitions and the purchasers of tickets for use in the retail trade gave them away, without pay, to their customers, and sometimes to others, did not at all save the scheme from being a lottery. There was a prize furnished by Malloska at each monthly drawing and paid for, in whole or in part, by his customers in the purchase of tickets to be given out in the course of retail trade. Chance determined the winners at the drawings.

A case in principle like the one at bar is *American Copying Co.* v. *Thompson* (Texas Civ. App.), 110 S. W. 777. We quote from the syllabus given in the S. W. Reporter:

"A contract for the sale and purchase of stamps for delivery by the buyer to his customers, which contemplates that the holders thereof shall by chance dispose of an automobile furnished by the seller of the stamps, is a lottery, and the contract is void."

In behalf of defendants it is contended that the court of equity has no jurisdiction to restrain defendants from committing the acts complained of, even though the scheme constitutes a lottery prohibited by the

statute. Of course, equity has no inherent juris-
diction to restrain the commission of criminal acts, but
equity has jurisdiction to protect property rights, even
in instances where such rights are injured by criminal
acts.

As stated in *Re Debs*, 158 U. S. 564, 593 (15 Sup.
Ct. 900) :

"Again, it is objected that it is outside of the juris-
diction of a court of equity to enjoin the commission
of crimes. This, as a general proposition, is un-
questioned. A chancellor has no criminal jurisdiction.
Something more than a threatened commission of an
offense against the laws of the land is necessary to call
into exercise the injunctive powers of the court.
There must be some interferences, actual or threatened,
with property or rights of a pecuniary nature, but
when such interferences appear the jurisdiction of a
court of equity arises, and is not destroyed by the fact
that they are accompanied by or are themselves viola-
tions of the criminal law."

Have plaintiffs property rights of a pecuniary nature
here involved? It would astound the business world
to hold that an established business is barren of prop-
erty rights of a pecuniary nature. Merchants, and
others engaged in business, feel that they have prop-
erty rights therein, and we must hold that an injury
to such rights, through criminal acts, is an injury to
property rights of a pecuniary nature.

No one should be permitted to employ criminal means
in trade rivalry. The law proscribes a lottery, and
those injured thereby in their rights of property are
not required to suffer successive inflictions of pecuniary
injury until a criminal prosecution is launched.
Courts do not depart from the rule that equity may
not interfere, except to protect property rights of
a pecuniary nature, in enjoining criminal acts exercised
by one dealer to enhance his sales to the calculated
pecuniary injury of a law-abiding competitor. De-
fendant Malloska adopted the lottery scheme for profit,

admits its employment increased his sales, and plaintiffs established the fact that such increase was directly traceable to their loss of customers.    We think plaintiffs entitled to an injunction.

The decree in the circuit is reversed and a decree will be entered in this court restraining defendants from carrying on the lottery scheme.    Plaintiffs will recover costs.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, CLARK, and MCDONALD, JJ., concurred.    BIRD, J., did not sit.